PER CURIAM:
Claimants brought this action to recover costs incurred from water damage to theh real estate and personal property allegedly due to the negligent maintenance of the drainage system along County Route 86 in Marshall County. At the hearing of this claim, the Court amended the style of the claim to reflect that Mary Ann Depto is a joint owner of the real estate and property at issue and is a party in interest, along with her husband John Depto. Respondent is at all times herein responsible for the maintenance of County Route 86 in Marshall County. The Court is of the opinion that respondent is liable in this claim for the reasons stated more fully below, and, further, the Court considers the claim to have been heard on the issue of liability only.
Claimants’ property and home are situate on Grandview Road designated as County Route 86 in Glendale, Marshall County. Claimants bought the real estate and home in October of 1978, where they have resided ever since. The property consists of approximately three-hundred feet of frontage property along County Route 86. County Route 86 is a two-lane blacktop highway with double yellow lines and white lines along the edges. Respondent re paved the portion of County Route 86 adjacent to claimants’ property in 1990. County Route 86 has a gradual slope toward claimants’ property. There is a ditch line on the opposite side of the road from the claimants’ property. The property north of claimants’ property rises to a higher elevation and levels off into a plateau. The plateau extends back to the right of way from County Route 86 toward claimants’ property. Claimants’ property is lower than County Route 86. The claimants have a gravel driveway in front of their home which is on an uphill incline at an approximate ten degree angle from their home and it extends from their garage up the hill where it intersects with County Route 86. There is a ditch line in front of claimants’ property which should connect to a culvert beneath the driveway, but claimants assert that respondent covered this culvert and it no longer carries water flowing from respondent’s ditch line. The driveway is elevated near the garage where it is also used as a small parking lot. At this location, there is a cinder-block retaining wall that retains the portion *86 of the elevated driveway next to the garage. Claimants assert that this wall cracked over a period of time due to water seeping into the cinder-block foundation and freezing. The wall was eventually replaced by the claimants at their own expense. The drainage system at issue is located between Comity Route 86 and claimants’ property. It begins north of claimants’ property and extends south underneath claimants’ driveway and underneath their neighbor’s driveway to the south. According to Mr. Depto, prior to respondent covering up the culvert in 1990 with asphalt, the water would flow from the culvert into a catch basin at the bottom of the hill, at which point it would continue to flow down hill. Mr. Depto testified that the culvert pipe at issue is approximately ninety feet long from start to finish and approximately ten to twelve inches in diameter.
Claimants contend that respondent is responsible for the maintenance of the drainage system located between Comity Route 86 and claimants’ property, and that it negligently covered the inlet of a culvert underneath claimants’ driveway with asphalt proximately causing water to drain onto claimants’ property. Claimants also contend that respondent negligently diverted the flow of water onto their property when it re paved County Route 86.
It is respondent’s position that it did not cover or otherwise block the claimants’ culvert, and that it is not responsible for maintaining culverts or drainage systems on or mider private driveways. Respondent also asserts that there are other causes to claimants’ flooding problems for which it is not responsible.
Mr. Depto testified that he recalls respondent re paving the portion of County Route 86 adjacent to his property twice in the twenty-five years that he and his wife have resided there. The most recent re paving project was in 1990. Mr. Depto testified that ever since the 1990 re paving project the claimants’ property has been flooded dming most heavy rainstorms. Claimants introduced into evidence numerous photographs depicting a large amount of rain water washing down onto their driveway during a storm in the spring of 1996 or 1997. Mr. Depto also testified that when there are heavy rainstorms during the winter the water often freezes and creates a thick layer of ice. According to Mr. Depto, this ice has prevented him and his wife from driving their vehicles out of the driveway on numerous occasions over the years, and it has caused several vehicles to slide off the driveway and over a hill. Fortunately, there have not been any serious injuries. Claimants also introduced into evidence photographs depicting the cinder-block retaining wall cracking and breaking apart, allegedly due to water seeping into the foundation and freezing. Mr. Depto testified that this is a result of the numerous flooding incidents, especially those during the winter months that have caused the foundation to crack and give away. Mr. Depot stated that prior to the re paving work performed in 1990, the culvert which mns underneath the driveway was open on both the north and south ends. Further, he stated that they had not had flooding problems prior to the re paving. According to Mr. Depot, during the re paving respondent extended the asphalt apron over too far onto his driveway covering the northern inlet side of the culvert with asphalt. Thus, no water has been able to flow into the culvert from tins location since 1990. Mr. Depot also testified that he contacted respondent on numerous occasions in an attempt to remedy this problem. However, he stated that respondent did not want to uncover the clogged culvert but instead wanted to dig another ditch in his yard and divert the water in another direction. He stated that respondent did not offer any viable solution to the problem despite numerous visits by it agents and employees. In addition to the blocked culvert, Mr. Depto testified that respondent raised the height of County Route 86 significantly which has made it higher than the claimants’ property. Now, instead of the excess water draining off the opposite side of the road and into the ditch *87 line where there are no homes, most of it flows onto the claimants’ driveway.
Roger Cain, the Resurfacing Coordinator for the respondent in Marshall County at the time of this incident, testified that he is responsible for overseeing all resurfacing projects in Marshall County. He recalls overseeing the resurfacing project at issue in 1990. He testified that respondent removed the excess build up of shoulder material, so as to divert water from the roadway to the ditch line. Mr. Cain does recall putting down an asphalt apron at the claimants’ driveway, but he stated that he and his crew did not pave over any pipe in that area that they could see. Furthermore, Mr. Cain testified that the asphalt apron did not extend in toward the claimants’ driveway quite as far as Mr. Depto indicated. However, Mr. Cain did state that respondent dug a ditch line north of the claimants’ property. When asked where he thought that the water in the ditch line would go, Mr. Cain stated that possibly it was just going to disperse into the claimants’ driveway or wherever it went before this project. Then, he stated that he really did not know where the water was going to go. He knew that it was going onto the road prior to this project which respondent was trying to stop. According to Mr. Cain, the respondent does not install driveway pipes on State projects such as this one. He stated that only in some areas where there is a federally funded proj ect does the State install driveway pipes. Finally, Mr. Cain stated that he did not know if the claimants had a culvert pipe underneath their driveway, but if they did, and it was located where the claimants’ allege it is, then it would be close to the respondent’s right-of-way.
Ron Faulk, the County Supervisor for the respondent in Marshall County at the time of this incident, testified that he was responsible for supervising the maintenance of the highways in Marshall County including County Route 86. He recalls being contacted by Mr. Depto in 1990 regarding this flooding problem. Specifically, he recalls Mr. Depto complaining about the culvert being blocked. He testified that he sent a couple of employees to the claimants’ property to search for the entrance to the culvert that Mr. Depto was alleging was blocked. The employees were unsuccessful in finding the culvert. Further, he also stated that the County Maintenance Organization was not permitted to install culverts under private driveways in most circumstances. Thus, even if the respondent had found a culvert under claimants’ driveway, he could not simply uncover the claimants’ culvert and install a new one. Mr. Faulk did admit that there was a drainage system with culverts near claimants’ property and that the water flowed under the claimants’ neighbor’s driveway and then over the hill. However, he is not sure who installed this culvert because it was done before he came to work for respondent. Mr. Faulk testified that he and a few engineers tided to suggest methods to resolve the claimants’ problem but none of the suggestions were suitable for the claimants. Mr. Faulk testified that ultimately it is the property owners’ responsibility to install a culvert under their driveway, and that respondent has a procedure that requires a property owner to apply for a permit based upon a detailed plan of what is going to be done. Further, the property owner’s plan must meet respondent’s specifications and the property owner must perform the job and pay for it. Then, at that point the respondent will assist in the maintenance of the culvert.
Robert Whipp, the Assistant District Engineer for the respondent in Marshall County at the time of this incident, testified that he is responsible for supervising maintenance work, construction work, and basically all other departments within his district which includes Marshall County. He is familiar with the portion of County Route 86 at issue as well as the drainage system. He stated that he first became aware of claimants’ problem with flooding shortly after respondent re paved County Route 86 in 1990. Mr. Whipp testified that County Route 86 in front of claimants’ property is super *88 elevated which means that the road is titled from one side to the other. According to Mr. Whipp, the portion of County Route 86 adjacent to claimants’ property is the high side of the road and the opposite side of the road is the low side. He visited the claimants’ property last year to make this and other observations regarding the flooding problem. Mr. Whipp also stated that “where the dirt and ground beside the road is higher than the ditch line and you get to where that dirt drops below the road you just take your ditch line into that area to drain the water away from the road, and at that time it becomes the land owner’s responsibility.” He stated that it is the property owner’s responsibility to maintain driveways. Further, he testified that it is respondent’s policy and practice to divert water off of its highways and it becomes the responsibility for the surrounding property owners to divert the water off of their properties. Additionally, Mr. Whipp testified that in his opinion there are independent contributing factors to the claimants’ water problems that are not the fault of the respondent whatsoever. First, most of the water is coming off of claimants’ northern neighbor’s property and flowing down hill onto their property. The reason being that the neighbor’s property is elevated higher which is causing this water to flow down hill onto the claimants’ property. Second, he stated that the claimants need to reestablish the driveway pipe to help divert the flow of some of the water flowing onto their driveway.
To hold respondent liable for damages caused by inadequate drainage, claimant must prove by a preponderance of the evidence that respondent had actual or constructive notice of the existence of the inadequate drainage system and a reasonable amount of time to correct it. Ashworth v. Div. of Highways 19 Ct. Cl. 189 (1993); Orsburn v. Div. of Highways, 18 Ct. Cl. 125 (1991).
In the present claim, the Court is of the opinion that the proximate cause of the damage to claimants’ property is respondent’s failure to maintain an adequate drainage system for the water flowing from County Route 86. The evidence established that respondent knew of the drainage problem at this location since the 1990 re-paving project. However, respondent failed to provide an adequate drainage system despite numerous requests for help from the claimants. The claimants also established the fact that an excessive amount of water was flowing from County Route 86 onto their driveway andnot from the claimants’ neighbor’s property. Further, claimants established that respondent knew or should have known that it negligently covered the inlet of claimants’ culvert with asphalt and yet failed to correct this mistake. Thus, the Court has determined that the claimants herein may make a recovery for the damages proximately caused to their property. Finally, the Court is concerned about discovering from respondent’s own witnesses that it has a “policy” of diverting water from the State’s roads and highways onto adjacent property owners to deal with at their own peril, and then offer little or no assistance to the property owners after doing so. This policy neither conforms with the law of this State nor is it fair and equitable to place such a burden on the property owners of the State of West Virginia.
In accordance with the findings as stated herein above, the Court directs the Clerk of the Court to set this claim for hearing on the issue of damages as soon as may be practicable.